UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| FRESHWATER ACCOUNTABILITY PROJECT, | ) ) ) |
| Plaintiff, | ) CASE NO.: ) ) |
| v. | ) JUDGE: ) |
| UNITED STATES ARMY CORPS OF ENGINEERS and COLONEL JASON A. EVERS, COMMANDER, UNITED STATES ARMY CORPS OF ENGINEERS, HUNTINGTON DISTRICT | ) ) ) ) ) ) |
| Defendants. | ) **COMPLAINT** ) |

## INTRODUCTION

1. Plaintiff FreshWater Accountability Project ("Plaintiff") challenges the actions and omissions of the Defendant, U.S. Army Corps of Engineers ("USACE" or "Corps"), in issuing federal permits and authorizations relating to a proposed waterfront barge facility on the Ohio River in Marietta, Ohio, owned and operated by DeepRock Disposal Solutions, LLC ("DeepRock"). Among other things, Plaintiff is challenging USACE's improper issuance of Permit No. LRH-2020-293-OHR-Ohio River M.P. 173.2 ("Permit"), under Section 10 of the Rivers and Harbors Act ("RHA"), 33 U.S.C. §403. The Permit is attached as Exhibit A and incorporated herein.

2. Defendant USACE issued the Permit to DeepRock on October 2, 2020, allowing DeepRock to potentially affect the Ohio River and more than 5 million people who get their drinking water from it. USACE failed to take the hard look required by the National Environmental Policy Act (NEPA) by virtually ignoring the public input and critical information submitted by Plaintiff.

3. The Permit states that DeepRock is "authorized to operate an existing barge unloading facility located along the right descending bank of the Ohio River." Permit, Ex. A hereto, page 1. A proper

review of the project proposed by DeepRock reveals that its detriments far outweigh its benefits due to very serious concerns about drinking water contamination, the increase in the disposal of fracked waste in the surrounding community, increased pollution, and damaging impacts of increased flooding. Approving the permit would be extremely detrimental to the affected public interest.

4. In determining whether to issue a Section 10 permit, USACE must evaluate "the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." 33 C.F.R. 320.4(a)(1). Any benefits that can reasonably be expected from the proposal must be balanced against its "reasonably foreseeable detriments." All factors that may be relevant to the proposal must be considered, including their cumulative effects. These factors may include: "conservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shore erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs, considerations of property ownership and, in general, the needs and welfare of the people."

5. In its public interest review, USACE improperly emphasized the alleged benefits of the project without giving due consideration to the project's detrimental effects and did not conduct a robust independent analysis of alternative sites to minimize and avoid impacts.

6. USACE's decision to issue the Permit based on a flawed and improper public interest review was arbitrary, capricious, an abuse of discretion, and not in accordance with the requirements of the RHA and USACE regulations. USACE's arbitrary and capricious action is also a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §701-706 *et seq.*

7. Plaintiff is a nonprofit organization with a mission to preserve freshwater supplies who is dedicated to promoting health by protecting the environment in Ohio and who has members

located throughout the state of Ohio, including members along the Ohio River who will be directly affected by the proposed DeepRock facility.

8. Plaintiff urges this Court to order USACE to revoke the §10 Permit and conduct a proper public interest review under NEPA.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) and 5 U.S.C. §§701-706 (APA).

10. This Court may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§2201 & 2202.

11. Venue is proper under 28 U.S.C. §3191(e) because members of Plaintiff reside in this district, and the public and private property to be impacted as a result of Defendant's issuance of the Permit is located in this district.

## PARTIES

12. Plaintiff brings this action on behalf of its members who live, work, and recreate in and in close proximity to the area that is the subject of the Permit. Plaintiff's member interests will be adversely affected by the negative impacts to the Ohio River resulting from the Permit.

13. Plaintiff's members regularly view the Ohio River which USACE has authorized DeepRock to negatively impact. These members enjoy the scenic beauty of the Ohio River, including viewing birds, other wildlife, and vegetation.

14. Plaintiff's members enjoy social activities, including kayaking and canoeing nearby and through the parts of the Ohio River that USACE has authorized DeepRock to affect.

15. Defendant United States Army Corps of Engineers is the federal agency responsible for the issuance of Section 10 permits that comport with the requirements of NEPA and the APA.

16. Defendant Colonel Jason A. Evers is the Commander for the Huntington District Office of the Corps, in Huntington, West Virginia. The Huntington District Office issues Section 10 permits under the RHA, and Defendant Evers -- through his official designee, Chief of the Regulatory Division, Michael E. Hatten -- issued the Permit at issue in this case.

## STATUTORY AND REGULATORY BACKGROND

17. With this action, Plaintiff seeks full disclosure of the impacts on the human environment of issuing this Permit. The Corps failed to prepare an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA"), in violation of the National Environmental Policy Act, ("NEPA"), 42 U.S.C. §§4321, et seq., and its finding that the project would have no significant environmental effect was based on an incomplete, hastily put-together administrative record. The Corps failed to take the legally required "hard look" at the direct, indirect, and cumulative impacts of the Corps' decision to authorize this project and failed to analyze a reasonable range of alternatives to that decision.

18. In addition, the Corps violated the Rivers and Harbors Act when it overlooked major consequences of the DeepRock facility in finding the project to be in the public interest and when it failed to adopt the least environmentally damaging alternative.

19. The APA provides that any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" is prohibited and may be overturned by a district court. 5 U.S.C. §706(2)(A).

20. The Corps is a federal agency subject to the APA. When the Corps issues a §10 permit, it is performing an "agency action" subject to judicial review under the APA, and USACE is bound by its own regulations. 33 C.F.R. 320 *et seq*.

**FACTS**

21. On April 8, 2020, USACE published a Public Notice LRH 2020-293-OHR ("4/8/20 Public Notice"), which stated that DeepRock had submitted an application for a §10 permit:

    > . . . to operate a barge offloading facility to transfer traditional well waste to existing upland storage tanks.  The existing facility to be utilized consists of a barge dock with a center platform and two (2) pile dolphins, which accommodate one (1) barge (300-feet long by 54-feet wide).  The existing facility includes a crane capable of handling hoses for the purpose of connecting dock pipe valves to barge piping valves.  An existing 90 feet long walkway/pipeway extends from the dock to the top of the river bank.  The two (2) existing interlocking piling dolphins extend 150-feet upstream and 75-feet downstream from the barge dock for mooring of tank barges (See Sheet 3 of 4).  The maximum riverward extension of the facility would be 158 feet from the shoreline at the normal pool elevation of 582.0 above msl.  The overall facility would extend approximately 241 linear feet along the shoreline.

    4/8/20 Public Notice at 1.  The 4/8/20 Public Notice requested "comments from the public, Federal, state and local agencies and officials, Indian Tribes and other interested parties in order to consider and evaluate the impacts of this proposed activity." *Id.*  USACE's 4/8/20 Public Notice required such comments to be submitted within 4 weeks, closing the comment period on May 6, 2020 – even though the COVID-19 pandemic had just begun a few weeks earlier to cause shutdowns of governments and businesses in Ohio, and much of the affected area near the DeepRock project does not have easy access to the internet.

22. On May 6, 2020, Plaintiff submitted detailed comments to USACE and requested that USACE hold a public hearing and extend the time period for submitting public comments ("May 6 Comments"). The May 6 Comments are attached hereto as Exhibit B and incorporated herein.

23. The May 6 Comments indicate that the DeepRock project's "detriments far outweigh its benefits due to very serious concerns about drinking water contamination, the increase in the disposal of fracked waste in the surrounding community, increased pollution, and damaging impacts of increased flooding. Approving the permit would be extremely detrimental to the affected public interest." May 6 Comments at 1.

24. Plaintiff requested that USACE hold a public hearing. Pursuant to 33 CFR 327.4(b), a request for a public hearing must be granted by USACE unless the district engineer determines that the issues raised in the request are insubstantial or there is otherwise no valid interest to be served by a hearing. "In case of doubt, a public hearing **shall** be held." 33 C.F.R. 327.4(c) (emphasis added).

25. The 4/8/20 Public Notice states that information collected during the comment period will be used in the preparation of an Environmental Assessment and/or an Environmental Impact Statement pursuant to NEPA. NEPA compels "federal agencies to take a hard and honest look at the environmental consequences of their decisions." *American Rivers v. FERC*, 895 F.3d 32, 49 (D.C. Cir. 2018). To satisfy this "hard look" requirement, the Corps must prepare an EIS for any action "significantly affecting the quality of the human environment." 42 U.S.C. §4332(2)(C).

26. The DeepRock project implicates several NEPA criteria requiring an additional review:

    a. The proposed project will negatively affect public health and safety. Fluids from oil and gas (O&G) waste can include leachate as well as any type of wastewater such as flowback, produced water, brine, and effluent from treatment facilities. Leachate forms when rainwater leaches chemicals and constituents from solid oil and/or gas waste disposed of in a landfill. O&G wastewaters contain varying amounts of salts, heavy metals, hydrocarbons, carcinogens, and naturally-occurring radioactive material (NORM). Radium content in production and flowback waters can range between 10,000 to 26,000 picocuries per liter (pCi/L). Any of these fluids could present severe public health risks and environmental harm. Examples of negative health effects from ingestion, dermal, and inhalation exposure to flowback water contaminants such as aluminum, barium, dibromochloromethane, and heptachlor include neurobehavioral alterations, gastroenteritis, upper respiratory system effects, nervous system disorders, liver and kidney disease, liver damage, and reproductive system dysfunction.

6

b. The effects on the quality of the human environment are likely to be very controversial where "substantial dispute exists as to the size, nature, or effect of the major federal action rather than to the existence of opposition to a use." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 2020 WL 1441923 (D.C. Cir. 2020), citing Town of Cave Creek v. FAA, 325 F.3d 320, 331 (D.C. Cir. 2003) (quoting *Found. for N. Am. Wild Sheep v. USDA*, 681 F.2d 1172, 1182 (9th Cir. 1982)). USACE has provided virtually no information on the anticipated environmental impact of the project and describes the DeepRock facility in a manner that attempts to diminish the potential for environmental impacts. DeepRock's proposal will require transporting hazardous wastes across a very busy roadway (Route 7 – designated an "Ohio River Scenic Byway"), endangering potentially thousands of motorists. Moreover, the pipeline would also need to cross over/under two railroad lines on the property. These activities will be carried out only about a mile from Ohio Riverfront Park, where the public recreates and close to where barge traffic must be careful navigating around Buckley Island.

c. The action has significant cumulative impacts. While the 4/8/20 Public Notice describes the construction of a facility for Marietta, Ohio, the proposed action also causes cumulative impacts due to increased barge traffic potentially carrying SGEWW to and from Marietta, increases in SGEWW received into Marietta, and increases in SGEWW leaving Marietta over the Ohio River. All of these impacts must be considered in assessing the Project's intensity and impact on the human environment. Further, the project is part of a larger network of drilling disposal activities. The cumulative impact of this drilling waste network has significant effects on the human environment through risks of spills, migration into storm and groundwater through

standard operations, air pollution emissions, and hazardous and radioactive waste transport and disposal.

27. On July 8, 2020, USACE gave notice that it would hold a Public Meeting on August 7, 2020 ("7/8/20 Public Notice"). The 7/8/20 Public Notice indicated that the August 7, 2020 Public Meeting would take place from 5:00 p.m. until 6:30 p.m. and would include a time for "Questions and Answers."

28. The 8/7/20 Public Meeting turned out to be a farce. First, it was held on a Friday evening at a time when most people are returning home from work. Second, USACE provided conflicting information about how USACE would conduct the meeting. For example, USACE did not clarify whether those who submitted written comments or questions would also be allowed verbal input at the Public Meeting. Several of Plaintiff's members wrote to USACE and requested clarification about when and how the public would be permitted to add input. USACE never responded to any of Plaintiff's members. Third, only after the 8/7/20 Public Meeting was started did USACE notify the participants that they would each be allowed only two (2) minutes to provide their input. The participants were also not notified of what order or when they would be called upon to provide their two minutes of input. For many, the allotted two minutes were not sufficient to complete their public input. Fourth, without warning, several of the Plaintiff participants were cut off – sometimes in mid-sentence – when USACE unilaterally determined that they were done.

29. Again, Plaintiff submitted written comments to USACE before the close of the comment period, August 17, 2020, as announced in the 7/8/20 Public Notice. As with Plaintiff's May 6 Comments, Plaintiff again requested that USACE hold a Public Hearing.

30. The §10 Permit was signed by DeepRock on September 29, 2020, and executed by USACE on October 2, 2020. A copy of the §10 Permit is attached as Exhibit A and incorporated herein.

## CLAIMS FOR RELIEF

### COUNT I

31. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

32. In granting the Permit for the DeepRock facility, USACE failed to balance the purported benefits of the proposed action against its "reasonably foreseeable detriments" 33 C.F.R. 320.4(a)(1). Instead, USACE relied on inaccurate information to support benefits for which there was little or no evidence, while ignoring or discounting corresponding detriments relating to the environment, aesthetics, conservation, wetlands, fish and wildlife values, flood hazards, floodplain values, land use, recreation, water quality, and social justice.

33. USACE's determination that granting the Permit was in the "public interest" constitutes agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of NEPA and its implementing regulations, and actionable pursuant to the APA 5 U.S.C. §§702, 704, and 706(2)(A).

### COUNT II

34. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

35. USACE's Public Meeting was a farce, and USACE did not comply with its own policies and regulations about public meetings.

36. 33 C.F.R. 327.4(b) states very clearly: "Requests for a public hearing under this paragraph **shall be granted**, unless the district engineer determines that the issues raised are insubstantial or there is otherwise no valid interest to be served by a hearing." (Emphasis added).

37. To create confusion for Plaintiff's members, and to avoid transparency, USACE scheduled a Public Meeting at a time and place when and where Plaintiff's members would have the most

difficulty participating – on a Friday evening and on an internet forum which was difficult to use and difficult to access.

38. Accordingly, USACE's granting of the Permit constitutes agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of USACE's own regulations, and actionable pursuant to 5 U.S.C. §§702, 704, and 706(2)(A).

### COUNT III

39. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

40. NEPA requires USACE to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. §4332(2)(E). The agency must consider "alternatives to the proposed action." *Id.* §4332(2)(C)(iii).

41. This analysis must "[r]igorously explore and objectively evaluate all reasonable alternatives" to their proposed action. 40 C.F.R. 1502.14(a). This analysis is the "heart" of the agency's NEPA consideration. *Id.* at 1502.14.

42. USACE violated NEPA in preparing, issuing, and approving the §10 Permit without consideration of all reasonable alternatives. 42 U.S.C. §§4332(2)(C)(iii) & (E); 40 C.F.R. 1502.14.

43. USACE's granting of the Permit without conducting a proper alternatives analysis constitutes agency action that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of NEPA and its implementing regulations, and actionable pursuant to the APA 5 U.S.C. §§702, 704, and 706(2)(A).

## COUNT IV

44. Plaintiff realleges and incorporates by reference herein all above allegations and aforementioned exhibits.

45. NEPA imposes action-forcing procedures that require agencies to take a hard look at environmental consequences. These environmental consequences may be direct, indirect, or cumulative. 40 C.F.R. 1502.16, 1508.7, 1508.8. NEPA requires agencies to consider long-term and short-term effects of agency action. 40 C.F.R. 1508.27(a).

46. NEPA regulations further mandate that the agency consider "whether the action is related to other actions with individually insignificant but cumulatively significant impacts." 40 C.F.R. 1508.27(b)(7). NEPA defines "cumulative impact" to mean "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non- Federal) or person undertakes such other actions." 40 C.F.R. 1508.7.

47. USACE's environmental investigation into the DeepRock facility was inadequate and impermissibly predicated on its previous assessment of another facility (Green Hunter) from 2014. USACE's Environmental Assessment (EA) of DeepRock relied too heavily upon a previous EA and did not take the requisite hard look which NEPA requires. Because the Plaintiff and the rest of the public were not able to participate adequately in the public review process, the information reviewed by USACE was incomplete. USACE should have completed an Environmental Impact Statement (EIS) in order to address all of the environmental effects of the DeepRock project.

48. The §10 Permit failed to take a hard look and is contrary to NEPA, 42 U.S.C. §4332(2)(C)(ii) and its implementing regulations, in 40 C.F.R. 1508.7, 1508.8, 1508.25, and 1508.27, and is arbitrary, capricious, an abuse of discretion, pursuant to the APA. 5 U.S.C. §706(2).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter a judgment:

1. declaring that the Corps' issuance of the Permit based on inadequate public interest review, improper procedures, and deficient alternatives analysis violates NEPA and the APA;

2. directing the Corps' to revoke the Permit for the DeepRock facility;

3. awarding Plaintiff their costs and reasonable attorneys' fees incurred in prosecuting this action; and

4. ordering such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ John A. Heer
John A. Heer
Ohio Bar No.: 0055309
jheer@fairshake-els.org
Fair Shake Environmental Legal Services
647 E. Market St.
Akron, OH 44304
234-571-1973

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing was filed electronically on December 2, 2020 and sent to all parties this 2nd day of December 2020, as follows:

| | |
|---|---|
| Colonel Jason A. Evers, Commander,<br>U.S. Army Corps of Engineers, Huntington District<br>502 Eighth Street<br>Huntington, West Virginia 25701-2070 | *U.S. Certified Mail,*<br>*Return receipt requested* |

By: /s/ John A. Heer